## SKAGGS ALPHA BETA, INC., Appellant,

v.

## Angele NABHAN, Appellee.

### No. 08–90–00263–CV.

Court of Appeals of Texas, El Paso.

April 3, 1991.

Rehearing Overruled May 1, 1991.

Stephen B. Tatem, Jr., Blake W. Barrow, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for appellant.

David Escobar, Escobar & Escobar, Steven L. Hughes, Grambling & Mounce, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

WOODARD, Justice.

This is an appeal from a $165,000.00 judgment for personal injuries sustained by the Appellee while shopping in the store of the Appellant. We affirm.

On March 12, 1987, the Appellee received a blow to the head delivered from a sign that was hanging over the meat counter.

Points of Error Nos. One, Two and Three basically complain that the trial court failed to charge the case in accordance with the law governing a premises liability case. The charge submitted to the jury did not include a question regarding whether the sign posed an unreasonable risk of harm of which the Appellant knew or should have known existed. Appellant timely objected to the failure to submit such an issue. A global issue, "[w]as the manner in which the defendant hung the sign negligence as herein defined?," an inquiry as to its proximate cause, together with the usual defini-tions of negligence, ordinary care and proximate cause were submitted.

Appellee contends that the requirement for notice of dangerous condition is implicit in the definitions given and the questions asked.

■ To be liable to an invitee, the possessor of the premises must have had actual or constructive knowledge of some condition that posed an unreasonable risk of harm to the invitee. The possessor must then fail to exercise reasonable care to reduce or eliminate the risk, which failure must proximately cause the invitee's injury. *Hernandez v. Kroger Company*, 711 S.W.2d 3 (Tex.1986).

The definitions given in the charge are: "Negligence" means failure to use ordinary care; that is, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care which would be used by a person or a corporation of ordinary prudence under the same or similar circumstances.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

■ Syllogistically, the Appellee's position is correct. We can conceive of no situation in which a sign hung in a negligent manner by a defendant that could foreseeably cause injury to an invitee would not pose an unreasonable risk of harm to an invitee that the defendant knew or should have known about. Nor can we conceive of a situation in which a defendant could hang a sign in a manner that posed

an unreasonable risk of harm to the invitee that the defendant knew or should have known about that would not be foreseeable negligence. The general negligence principles and premises liability principles cease to coincide when its a third party that creates a dangerous condition, and the person responsible for the premises negligently fails to find, reduce or eliminate the risk.

The duty to keep premises in a safe condition may subject the possessor of the premises to direct liability for negligence in two situations: (1) those arising from a premises defect; (2) those arising from an activity or instrumentality. *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985). The act of negligence pleaded, and the question submitted to the jury involved an activity on the part of the Appellant, that is, its action of negligently hanging the sign which created a dangerous instrumentality. It is clear that cases involving liability for on premises activities are properly charged as typical negligence cases. *Physicians and Surgeons General Hospital v. Koblizek*, 752 S.W.2d 657, 659 (Tex.App.—Corpus Christi 1988, writ denied). (In that case, the plaintiff pleaded premise defect on a floor condition, but the jury was erroneously charged with a typical negligence action. The premises possessor was accused in the petition of *allowing* a floor defect, not creating it). Points of Error Nos. One, Two and Three are overruled.

Points of Error Nos. Four, Five and Six attack the sufficiency of evidence. In considering a "no evidence" legal insufficiency point, we consider only the evidence which tends to support the jury's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex. 1951). The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of

probative force to support the finding, it must be sustained. *Carrasco v. Goatcher*, 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ). It is not within the province of the court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820 (1947).

Point of Error No. Four alleges factual and legal insufficiencies in the evidence of the negligent hanging of the sign that proximately caused the injuries. Appellant's employee testified that the sign in question hung approximately a bit more than three or four inches, or perhaps six to eight inches in front of the glass of the meat display case, and the bottom part of the sign was approximately twelve to fifteen inches above the display case. This employee further testified the sign weighed approximately five or six pounds, or perhaps twelve or thirteen pounds. The sign was suspended by chains bolted to the ceiling and attached to the sign by "s" hooks. The employee stated he heard a knock on the window at the meat counter and saw the Appellee, who was leaning across the counter, straighten up and hit the sign with her head.

The Appellee testified that something hit her on the head, she became dizzy and confused, she heard two boys snicker and make reference to being drunk and another lady state "no, boys the sign fell on her." She stated she first realized that it was the sign that hit her because, when she got up, she "saw the sign lying right there. It laid on my back on my neck with the two chains." She saw a man try to pick up the sign, and heard him state "that damn thing is heavy."

There is sufficient evidence to support a jury finding that a heavy sign was suspended by the employees of the Appellant

to an elevation that endangered and injured the Appellee. Point of Error No. Four is overruled.

Point of Error No. Five contends insufficient evidence to support the jury's award of $50,000.00 for medical care, and Appellant's argument under the point is directed toward future medical expenses. There was medical testimony that Appellee would incur approximately $25,000.00 to $50,000.00 in future medical expenses for further diagnostic studies and that future surgery might be necessary. The costs for office visits was estimated to be around $150.00 to $175.00. Costs of laboratory tests and consultation with neurosurgeon were approximately $4,300.00. Evidence is sufficient to support the award.

Point of Error No. Six complains of the award of $100,000.00 for physical pain and mental anguish. The Appellee testified that she no longer had patience with her customers, and her ability to sell clothes has been affected. She had and has chronic headaches which affect her domestic environment, and she has trouble sleeping.

Appellant urges that the award is clearly unconscionable and so excessive as to shock the sense of justice. This is no longer the test. *Larson v. Cactus Utility Company*, 730 S.W.2d 640 (Tex.1987); *Pope v. Moore*, 711 S.W.2d 622 (Tex.1986). Translating pain and mental anguish into dollars is necessarily an arbitrary process. There are no objective standards of measurement. The appellate court is not free to substitute its judgment for that of the fact finder. Pain and mental anguish in the past, and the probability thereof in the future, was established by the evidence. Intrinsic values cannot be extrinsically quantified except by arbitrary means. Once the existence of some pain and mental anguish has been established, the incalculable quantity awarded cannot logically be refuted or shown to be factually insufficient because there are no objective facts to calibrate measurement. Therefore, the fact finder awards these damages at its discretion. *Daylin, Inc. v. Juarez*, 766 S.W.2d 347 (Tex.App.—El Paso 1989, writ denied). Point of Error No. Six is overruled.

Judgment of the trial court is affirmed.