**WORSHAM STEEL COMPANY, Appellant,**

v.

**Gonzalo ARIAS, Appellee.**

**No. 08-91-00364-CV.**

Court of Appeals of Texas, El Paso.

May 20, 1992.

Jack Brewster, Brewster and Mayhall, Ronald Calhoun, Calhoun & Villa, El Paso, for appellant.

Michael J. Gopin, El Paso, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

BARAJAS, Justice.

This appeal arises from a case involving the wrongful discharge of an employee in violation of Article 8307c of the Texas Workers' Compensation Act. Appellant, Worsham Steel Company, appeals from an adverse jury verdict in which Appellee, Gonzalo Arias, was awarded $1,243,300 in both actual and exemplary damages. We reverse and remand.

## I. SUMMARY OF THE EVIDENCE

In December of 1989, Arias, a longtime employee of Worsham Steel Company, sustained a back injury while in the scope of his employment. It is unclear whether or not Arias reported the injury to his supervisor on the day of his injury. It is clear, however, that Roberto Gomez, a fellow employee who witnessed the accident, reported Arias' injury to a Worsham supervisor the day after the accident.

Although experiencing severe pain, Arias elected not to immediately seek medical care after the accident. Instead, Arias continued to report to work for two days following his accident, wanting to "wait and see" if he would soon "feel better." Unfortunately, Arias did not begin to "feel better" as soon as he had hoped. In fact, the record reveals that Arias was unable to return to work on the third day after his accident due to persisting back pain. Arias, however, failed to notify Worsham of his inability to work as a result of his back injury.

Arias eventually returned to work after a two-day absence. Upon his return, Arias was informed by Worsham that he no longer was employed with the company. Worsham explained to Arias that they had assumed "he quit" when he failed to report to work for two consecutive days. Worsham based this assumption on an alleged statement made by Arias prior to the injury. According to Worsham, Arias had supposedly expressed an intent to quit if he was not given a part-time position with the company. Since Worsham notified Appellee that part-time positions were not available, Worsham believed that Appellee had quit when Appellee did not show up to work.

On the day of his discharge, Arias asked Worsham to send him to a doctor because of his back injury. Worsham, however, refused to send Arias to the doctor because, according to Worsham, Arias was no longer an employee. Arias nonetheless vis-

ited a doctor that very same day. After his initial medical examination, Appellee was informed that he was suffering from a severe back injury.

The record reflects that Arias filed a claim for workers' compensation benefits and notified Worsham of the claim. After negotiating the claim, Worsham and Arias settled the workers' compensation claim. Consequently, this appeal only involves the wrongful discharge claim which was filed by Arias against Worsham.

## II. ISSUES PRESENTED

On appeal, Worsham has advanced twelve points of error which collectively present four distinct issues. The first issue involves the question of whether Worsham's conduct is actionable under Article 8307c of the Texas Workers' Compensation Act. The second issue concerns the sufficiency of evidence to support the jury's award of actual damages, i.e., whether being "sad," even being "very sad," standing alone, is sufficient to support an award for mental anguish. The third issue attacks the sufficiency of the evidence to support the jury's finding that Worsham acted "willfully or maliciously" in discharging Arias. Finally, the fourth issue questions the sufficiency of the evidence to support the jury's award of exemplary damages. To adequately dispose of this appeal, it is only necessary to reach the first two issues.

## III. STANDARD OF REVIEW

Worsham's evidentiary challenges are governed by two distinct standards of review. The applicable standard is determined by whether Worsham's challenge is predicated on legal or factual sufficiency grounds.

■ When presented with a "no evidence" or legal sufficiency challenge, this Court will consider the evidence and all reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury verdict or court finding. All evidence and inferences to the contrary are to be disregarded. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987);

*Alm v. Aluminum Company of America*, 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford*, 726 S.W.2d at 16.

■ On the other hand, when a factual sufficiency challenge is advanced, this Court must examine all of the evidence. *Lofton v. Texas Brine Corporation*, 720 S.W.2d 804, 805 (Tex.1986). After considering and weighing all of the evidence, this Court may set aside a finding only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Since this Court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would clearly support a different result. *Clancy v. Zale Corporation*, 705 S.W.2d 820, 826 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

## IV. DISCUSSION

### A. Wrongful Discharge—Article 8307c

In Points of Error Nos. One, Two, Eight, Nine and Twelve, Worsham asserts that Arias has failed to establish a cause of action for wrongful discharge as a matter of law. Additionally, Worsham argues that even if its conduct is actionable under Article 8307c, the evidence presented is both legally and factually insufficient to support any affirmative recovery.

■ Resolution of the above points of error requires an analysis of both Article 8307c and the evidence contained in the record. Specifically, Article 8307c, § 1 provides:

No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, [sic] or has testified or is about to testify in any such proceeding.

Tex.Rev.Civ.Stat.Ann. art. 8307c (Vernon Pamph.1992). Relying on the language employed in this statute, Worsham alleges that there is no cause of action for wrongful discharge because Arias failed to make a claim for workers' compensation benefits until two days after he was discharged from his employment with Worsham. In essence, Worsham advances the argument that no cause of action for wrongful discharge exists unless a claim for workers' compensation has been filed at the time of discharge. We disagree.

The purpose of Article 8307c is to protect injured employees who are entitled to benefits under the Workers' Compensation Act and to prevent them from being discharged once they have taken steps to collect such benefits. *Mid–South Bottling Co. v. Cigainero*, 799 S.W.2d 385 (Tex.App.—Texarkana 1990, writ denied). The natural derivative of this purpose is a liberal construction of the prerequisites for an Article 8307c claim. Specifically, Texas courts have held that wrongful discharge is a viable cause of action in situations in which an employee was fired before filing a claim for compensation benefits. *Id.* at 389; *Hunt v. Van Der Horst Corp.*, 711 S.W.2d 77, 79 (Tex.App.—Dallas 1986, no writ); *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 115–16 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.). In fact, all that is required to prosecute such a claim is evidence that shows an employee took steps toward instituting a proceeding under Article 8307c. *Cigainero*, 799 S.W.2d at 389.

In both *Hunt* and *Cigainero*, the Dallas court and the Texarkana court held that the injured employees "instituted a proceeding" pursuant to Article 8307c once they informed their employer of their on-the-job injury. *Cigainero*, 799 S.W.2d at 389; *Hunt*, 711 S.W.2d at 80. In the instant case, Arias informed his supervisor of his injury before his employment ended with Worsham. Such action constituted an affirmative step toward instituting a proceeding under Article 8307c. Consequently, Worsham's discharge of Arias is actionable conduct. To hold otherwise would be "to reward employers who are particularly adept at anticipating and quick in firing potential workers' compensation claimants over those who are slower to retaliate." *Hunt*, 711 S.W.2d at 80.

■ Having found that Worsham's actions in the instant case are actionable pursuant to Article 8307c, the question remaining is whether there exists sufficient evidence to support a recovery for Arias' wrongful discharge. In the simplest of terms, the evidence is sufficient if Arias' workers' compensation claim contributed to Worsham's decision to terminate him. *See Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654 (Tex.App.—El Paso 1989, writ denied); *Cigainero*, 799 S.W.2d at 390. Thus, any sufficiency inquiry entails a determination of the adequacy of Arias' proof of a causal link between the termination of his employment and the filing of his workers' compensation claim. *Paragon*, 783 S.W.2d at 658.

After having carefully reviewed the evidence that supports recovery, we find there is more than a scintilla of evidence establishing that Appellee was wrongfully discharged from his employment with Worsham. Indeed, the record reveals Arias was discharged shortly after Worsham was given notice of the injury. Moreover, there is testimony in the record that establishes Worsham's negative attitude toward workers' compensation claims in general and Arias' back injury in particular. There is also direct testimony from Worsham which established that if the injury had never occurred there would have been no reason whatsoever to terminate Arias. Based on the existence of such facts, Worsham's legal sufficiency challenge fails.

In regard to the factual sufficiency challenge, a review of the record as a whole discloses controverting evidence. For example, the record reveals that Arias repeatedly stated that he was "fired" because of his back injury. This evidence, however, was controverted by Worsham's testimony that Arias quit his job because of Worsham's refusal to reduce his hours to a part-time position. Standing on its own, this evidence is not strong enough to make the jury's finding so contrary to the over-

whelming weight of the evidence as to be clearly wrong and unjust. *Cain,* 709 S.W.2d at 176. More importantly, as an appellate court, we may not pass upon the credibility of the witnesses or substitute our judgment for that of the jury, even if the evidence would support a different result. *Clancy,* 705 S.W.2d at 826. Consequently, the jury's finding that there was a causal connection between Arias' claim for compensation benefits and his discharge should not be upset. Worsham's Points of Error Nos. One, Two, Eight, Nine and Twelve are overruled.

### B. Actual Damages for Wrongful Discharge

The jury awarded Appellee $643,000 in actual damages, arriving at such an amount by considering four elements of damages contained in the trial court's charge. Specifically, the trial court instructed the jury that in calculating damages they could consider: (1) past lost wages; (2) future lost wages; (3) past mental anguish; and (4) future mental anguish. Significantly, the submitted instruction did not require the jury to apportion its award of damages to any of the above four distinct elements.[1]

In Point of Error No. Three, Appellant attacks the jury's award of damages on both legal and factual sufficiency grounds. In particular, Appellant attacks the evidentiary support for past and future mental anguish. Before reaching the propriety of this attack, it is helpful to preface the issue with a brief overview of the law regarding mental anguish as a separate element of damages.

■ At the outset, mental anguish is a compensable injury for which damages may be awarded. The process of awarding damages for such an injury is difficult because mental anguish constitutes a subjective, non-pecuniary loss. Since mental anguish is a non-pecuniary loss, the amount awarded is generally within the broad discretion of the jury. Such discretion necessarily carries with it the risks of passion, prejudice, speculation and bias. Despite these risks, this Court has previously held that once the existence of some amount of mental anguish has been established, a jury's subsequent award of damages is virtually unreviewable. *Brown v. Robinson,* 747 S.W.2d 24 (Tex.App.—El Paso 1988, no writ).[2]

While the holding in *Brown* effectively limits the reviewability of the amount of damages, such holding does not apply to the issue of whether a party has a *right* to recover for mental anguish. Indeed, in recognition of the risks involved in awarding discretionary damages, Texas courts have found it essential to restrict the types of injuries that qualify as mental anguish. This realization has manifested itself in scores of cases in which our courts have adopted certain definitional requirements for recovery based on mental anguish.

■ In reviewing the sufficiency of evidence to support Arias' award for mental anguish, this Court is guided by the definitions espoused by other appellate courts throughout our state. Specifically, mental anguish has been defined in such a way as to imply:

[A] relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emo-

---

1. Insofar as the trial court failed to apportion actual damages among the four elements noted above, a finding that the evidence is insufficient to support an award for mental anguish serves to invalidate the jury's entire award for actual damages. This is so because, at best, the record only supports the sum of $250,000 in damages for past and future lost wages.

2. By using the phrase "virtually unreviewable" we are not implying that the amount of dam-ages for mental anguish is never reviewable by an appellate court. Instead, we are simply acknowledging the difficulties inherent in an appellate court's review of discretionary damages. While acknowledging the difficulties, we also recognize that "common sense suggests that courts should have some authority to review excessive or inadequate damage awards." *See* William Powers, Jr., Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L.Rev. 515, 567 (1991).

tions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

*Trevino v. Southwestern Bell Tel. Co.,* 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ); *See also Havens v. Tomball Community Hosp.,* 793 S.W.2d 690 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Underwriters Life Insurance Co. v. Cobb,* 746 S.W.2d 810, 819 (Tex. App.—Corpus Christi 1988, no writ); *Group Hosp. Services, Inc. v. Daniel,* 704 S.W.2d 870 (Tex.App.—Corpus Christi 1985, no writ); *K–Mart Corp. Store No. 7441 v. Trotti,* 677 S.W.2d 632 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Gill v. Snow,* 644 S.W.2d 222, 224 (Tex. App.—Fort Worth 1982, no writ); *Ryder Truck Rentals, Inc. v. Latham,* 593 S.W.2d 334, 339 (Tex.Civ.App.—El Paso 1979, writ ref'd).

Even though the definition of mental anguish has at times been described as "unwieldy," and a matter of semantics, it is clear that appellate courts have interpreted it in such a way as to produce a common thread in sufficiency cases. *See State Farm Mutual Automobile Insurance Co. v. Zubiate,* 808 S.W.2d 590, 600–601 (Tex. App.—El Paso 1991, writ denied) (plaintiffs felt intimidated, confused, frightened, "betrayed, scared, angry and devastated" and were "unable to sleep" held sufficient to prove mental anguish); *Skaggs Alpha Beta, Inc. v. Nabhan,* 808 S.W.2d 198, 202 (Tex.App.—El Paso 1991, no writ) (plaintiff descriptively testified that she suffered chronic headaches which affected her domestic environment and had trouble sleeping); *J.B. Custom Design & Building v. Clawson,* 794 S.W.2d 38, 43 (Tex.App.— Houston [1st Dist.] 1990, no writ) (plaintiffs experienced "a tremendous amount of mental anguish, embarrassment, and distress" held legally and factually sufficient to support award for mental anguish); *City of Ingleside v. Kneuper,* 768 S.W.2d 451, 460 (Tex.App.—Austin 1989, no writ) (plaintiff, among other things, was in "total panic" and "great fear," was "nervous and irritable," and he would "bite his nails" and "pace the floor" held legally and factually sufficient to support award for mental anguish); *Kneip v. Unitedbank–Victoria,* 734 S.W.2d 130, 134–36 (Tex.App.—Corpus Christi 1987, no writ) (plaintiff, among other things, suffered from loss of sleep and headaches held sufficient to support award for mental anguish). In short, Texas courts have interpreted the definition of mental anguish to mean that recovery is warranted in such cases where the plaintiff's mental pain has risen to such a level that it has rendered him incapable of dealing with certain everyday activities. For instance, as a result of the mental pain, the plaintiff suffers from a myriad of negative emotions. Some of these emotions may manifest themselves in such a way as to make it difficult for the plaintiff to eat, sleep, work, socially interact or carry on any other activity which, until the time of the alleged injury, he could accomplish on a day-to-day basis without difficulty.[3]

With the definitional requirements for mental anguish outlined above, it is now necessary to review the evidence contained in the record. The following excerpt, elicited from Arias during direct examination, is all the evidence Arias offered in support of the award of mental anguish:

Q. Now, how did you feel after they fired you? What did you feel like? Tell me.

A. Sad. It was very sad. Nothing was the same anymore.

Q. What do you mean nothing? Tell me what's changed.

A. Well, for me everything changed, economically and morally, because nothing was the same.

Q. How has your family life changed?

A. Well, it wasn't the same because the weekly check that I would get wasn't there, so we had to go real easy on clothes and food and had to think about things more.

Q. And today the paychecks still aren't the same as they were before, are they?

**3.** Pursuant to *St. Elizabeth Hosp. v. Garrard,* physical injury is no longer a prerequisite for recovery based on mental anguish. 730 S.W.2d 649, 654 (Tex.1987).

A. No, lower, yes.

Q. They're more than half lower aren't they?

A. About half, more or less.[4]

While the law permits a party to testify as to his own mental suffering, it is clear Arias failed to prove his "suffering" reached the level of mental anguish. *Cavnar v. Quality Control Parking, Inc.*, 678 S.W.2d 548 (Tex.App.—Houston [14th Dist.] 1984), *rev'd on other grounds*, 696 S.W.2d 549 (Tex.1985). It is apparent from the record that Arias never testified as to any mental suffering, pain or humiliation. At best, the above testimony reveals only inconveniences and unpleasantness attendant in having been wrongfully discharged from his longtime employment.

Reviewing only the evidence that supports the jury's finding, and in deference to that finding, we nonetheless find that the above testimony does constitute more than a "scintilla" of evidence. A review of such evidence and the record as a whole, however, reveals that the evidence is factually insufficient to support an award for mental anguish.

The evidence in support of the jury's finding does not imply the relatively high degree of mental pain that is required by established and respected Texas law. Specifically, testimony as to Arias being "sad," even being "very sad," standing alone, is insufficient to show mental anguish. Moreover, in response to the numerous leading questions propounded to him by his attorney, Arias was free to have stated or explained whatever pain, distress, anguish, embarrassment, grief, severe disappointment, indignation, wounded pride, shame, despair, public humiliation or other unpleasant sensation he was subjected to as a result of his wrongful discharge. *See Teledyne Exploration Co. v. Klotz*, 694 S.W.2d 109 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). A review of the record fails to reveal any such testimony.

In sum, after looking at all the evidence on both sides, we cannot say the slight evidence regarding mental anguish is in satisfactory harmony with the fact finding of the jury. In making this determination, we are cognizant of the deference to be given jury findings. While we respect this deference, we are also aware that as a court of *stare decisis*, we are required to be guided by other cases with similar facts and issues. We simply cannot ignore the state of law which stands for the proposition that "sadness" by itself is not enough to support an award for mental anguish. Consequently, the jury's award for mental anguish is manifestly wrong and unjust. Appellant's Point of Error No. Three is sustained.[5] The disposition of Point of Error No. Three renders it unnecessary to consider all remaining points.

Because the trial court's charge failed to divide the damages issue, it is impossible to segregate the corresponding amount of damages to any of the respective elements.

4. Appellant's testimony was translated from Spanish to English. The author of this opinion, as the only Spanish speaking jurist on the Court, can best appreciate the linguistic and cultural difficulties often encountered by litigants in effectively communicating. However, absent an objection, this Court must assume that the testimony of the Appellant was correctly translated from Spanish to English. Accordingly, the dissenting opinion is correct in stating that as an appellate court reviewing the record, we are not in a position to judge the quality of translation, nor should we speculate or second guess the meaning of Spanish words in their vernacular.

5. In her dissent, Justice Larsen agrees that in order for a plaintiff to recover for mental anguish "he must prove such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation." Yet despite her acceptance of the law relating to mental anguish, Justice Larsen concludes the evidence is factually sufficient to support recovery. Clearly, such a conclusion is inherently inconsistent. Resolution of this inconsistency can only be achieved by interpreting Justice Larsen's dissent as a philosophical rejection of an appellate court's fact-finding jurisdiction. Without engaging in a discussion of the propriety of an appellate court's power to review for factual sufficiency, we can only state that until the electorate of our state acts to the contrary, we are bound by oath to uphold the constitution. At the present time, the constitution confers on appellate courts the right to review for factual sufficiency. Tex. Const. art. V, § 6; *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986). Until the constitution requires the contrary, we, as an appellate court, have no authority to disturb that right.

As a consequence, a remand is dictated as to all actual damages awarded by the jury. Furthermore, since all of the actual damages are unliquidated and liability is contested, Rule 81(b)(1) of the Texas Rules of Appellate Procedure requires this Court to reverse and remand for a retrial of all issues. Tex.R.App.P. 81(b)(1); *Paragon*, 783 S.W.2d at 662.

The judgment of the trial court is reversed and the cause remanded.

LARSEN, Justice, dissenting.

I respectfully dissent. I would hold, in deference to the implied finding of the jury, that sufficient evidence of mental anguish existed to support the verdict on actual damages. It is true, as the majority recites, that for plaintiff to recover for mental anguish he must prove such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation. *Havens v. Tomball Community Hospital*, 793 S.W.2d 690, 692 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Underwriters Life Insurance Co. v. Cobb*, 746 S.W.2d 810, 819 (Tex.App.— Corpus Christi 1988, no writ). The best proof of these emotions, however, is not necessarily a rote recitation of this language from the case law, which is what the majority seems to require. The jury and the trial court who witnessed plaintiff's testimony that he was very sad and that his life had changed both economically and morally, were clearly satisfied that he had suffered painful emotions sufficient to justify an award for mental anguish. It is our role as a reviewing court to respect that conclusion by those who were present in the courtroom where there is some evidence in the record to support it. It is not our role to second guess the fact finder because we do not find that same evidence sufficiently compelling upon our reading of the cold record in the confines of our ivory tower.[1]

Awarding mental anguish damages is an area where deference to the fact finder is vital; those painful emotions which justify an award for mental anguish are most reliably reflected in the demeanor, tone of voice and hesitations of a witness, not in a rehearsed litany of authorized words. A glib and well-practiced plaintiff is not necessarily more entitled to mental anguish damages than is a stoic or guileless one, yet that is the logical extension of what the majority holds here.

I see no real difference between this plaintiff's testimony that his termination made him "very sad," insufficient in the majority's view, and testimony in another case recently before this Court. *See Skaggs Alpha Beta, Inc. v. Nabhan*, 808 S.W.2d 198, 202 (Tex.App.—El Paso, 1991, no writ). This Court upheld an award for mental anguish in *Nabhan*, where a plaintiff testified that because of her injury she frequently lost patience with her customers, her ability to sell clothes had been affected and she had chronic headaches and trouble sleeping. There is no real difference between the two cases, I submit, beyond a purely semantic game.

I find another aspect of this decision troubling. Mr. Arias's testimony was translated from Spanish into English. The word or words he used which the interpreter translated as "sad" and "very sad" could have dramatically different connotations in Spanish. For example, *triste* translates literally as sad; *lúgubre* as sad, mournful, gloomy, melancholy, lugubrious, dismal; *pensativo* as pensive; *pena* as pain, affliction, sorrow, grief, uneasiness of the mind, anxiety, a violent emotion of the mind; *dolor* as affliction, anguish, grief or painfulness; *melancólico* as melancholy, sad, gloomy, fanciful, cloudy, mournful and hypochondriacal. *Velazquez, Spanish and English Dictionary*, Follett Publishing Co., 1974. Perhaps Mr. Arias's Spanish testimony was simply that he was "very sad," or perhaps that was an easy translation of much more loaded terms. We, as an appellate court reviewing the record, are not in a position to judge this. The jury

---

1. This is not a philosophical rejection of factual sufficiency review, but an acknowledgement that we were not in the courtroom to view the evidence. Without that acknowledgement, "deference to jury findings" loses its meaning.

and trial court, who watched the witness testify, were in a much better position to determine the impact of what plaintiff actually said.

Additionally, Mr. Arias's rather odd statement that everything had changed for him, economically and morally, is perhaps explained by one translation of the word "grief": *"dolor moral, como el causado por una desgracia,"* literally, moral pain, as caused by misfortune or adversity. *See generally, Velazquez, Spanish and English Dictionary,* Follett Publishing Co., 1974. Moreover, "moral" in Spanish translates in English as both moral and morale, two very different concepts. Thus, the word "moral," which seems entirely out of place (even nonsensical) in the English translation, may be a word of great emotional impact in plaintiff's original Spanish testimony.

In any event, it is not this Court's role to speculate or second guess a translation, but I believe that greater deference to what actually took place in the courtroom is required here, particularly because we are twice removed from plaintiff's testimony: we are reading the transcribed record of words translated from another language.

This case illustrates precisely that result which our heightened deference in reviewing mental anguish awards is designed to prevent. Converting emotional anguish into dollars is a subjective process uniquely within the discretion of the fact finder. *See Brown v. Robinson,* 747 S.W.2d 24 (Tex.App.—El Paso 1988, no writ). The process of deciding just what quality or quantity of evidence will trigger an award of mental anguish damages is an equally subjective process, uniquely dependent upon evidence which cannot be reflected in the cold record. The jury's initial decision to award mental anguish damages should be just as deferentially treated as is the review of the dollar amount of such an award. A truly anguished plaintiff powerless to artfully voice his misery, whether because of personality, lack of education or pride, jeopardizes his award. Meanwhile, a manipulative plaintiff schooled in the cor-

rect language will see his award upheld simply because he articulated the right phrases. This seems an unjust result and not one which the law requires.

I would affirm the judgment of the trial court.