COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

TIERRA SOL JOINT VENTURE and
                 )

SAMUEL & COMPANY, INC.,                          )              
No.  08-02-00511-CV

                                                                              )

Appellants,                         )                    Appeal from the

                                                                              )

v.                                                                           )                 168th District Court

                                                                              )

THE CITY OF EL PASO,                                    )           
of El Paso County, Texas

                                                                              )

Appellee.                           )                   (TC# 96TX838)

                                                                              )

 

 

O
P I N I O N

 

This is an appeal
from a delinquent tax collection suit. 
For the reasons stated, we reverse and remand.

I.  SUMMARY
OF THE EVIDENCE

Appellee, the City
of El Paso, filed suit against Appellants, Tierra Sol Joint Venture (the AJoint Venture@)
and Samuel and Company, Inc., to collect taxes on two parcels of land identified
as property #X214-999-000A-4530 (A#4530@) and property #X214-999-000A9625 (A#9625@).  During the trial, the City introduced
certified tax statements for property #4530 and #9625.  The statements reflected delinquent taxes for
property #4530 for the years 1989 through 1995 and for property #9625 for the
years 1990 through 1995.








The Joint Venture
was formed in 1981.  The purpose of the
Joint Venture was to acquire two parcels of properties that are the subject of
this suit, #4530 and #9625.  The Joint
Venture was originally composed of James E. Branson, Jr., Walter G. Passero,
William J. Morgan, John H. Folmer, and Victor Apodaca, Jr.  Branson assigned 10 percent of his interest
in the Joint Venture to APCO Investments shortly after the formation.  Morgan and Apodaca also sold their interest
in the Joint Venture to Passero and Folmer. 
After these transactions, the Joint Venture consisted of Branson,
Passero, Folmer, and APCO.  In 1982, APCO
transferred its interest in the Joint Venture to Robert C. Samuel.  Samuel also acquired Passero=s and Folmer=s
interests in the Joint Venture.  These
transactions resulted in the Joint Venture being composed of Branson and
Samuel.

Branson and Samuel
were involved in numerous lawsuits between each other.  During the course of these lawsuits, Samuel
gave sworn testimony that he considered himself a partner of the Joint Venture
since 1982 when he first acquired an interest from APCO.  Samuel testified that he was bound by the
Joint Venture partnership agreement. 
Samuel also filed pleadings during the course of the lawsuits stating he
was a member of the Joint Venture and asserting his rights as a partner under
the Joint Venture agreement.  From 1982
through 1996, Samuel admitted that he made statements, either personally or
through his attorney, to banks, governmental agencies, and providers of various
services that he was a partner or joint venturer, or owned a partnership or
joint venture interest in the Joint Venture. 









Branson also filed
a sworn pleading asserting that Samuel became a member of the Joint Venture
pursuant to an assignment of interest in June, 1982.  However, Branson testified that he objected
to the transfer of interest in the Joint Venture to Samuel and never agreed to
admit him as a new party under the partnership agreement.  Branson stated he never had any intention of
allowing Samuel to become a partner and never entered into an agreement for
sharing profits or losses.  Branson
controlled the books of the Joint Venture and did not allow Samuel access to
the books.  Branson stated that he and
Samuel filed separate tax returns because they could not agree on how to file
them.  Branson and Samuel settled their
differences in 1996, and Branson assigned his interest in the Joint Venture to
Appellant Samuel and Company, Inc.

During the trial,
Branson denied that the Joint Venture received notices of delinquency.  Samuel never alleged that he did not receive
notices of delinquency, but alleged that he was not a partner in the Joint
Venture during the years 1982 through 1995.

Vincent Kemendo,
the Assistant Commercial of Industrial Property Manager for the Central
Appraisal District, testified that the Appraisal District=s records listed Samuel as the owner of
the properties for the years 1982 through 1995 because it relied on a document
that recited a conveyance of the properties in question from APCO to
Samuel.  Kemendo testified that the
Appraisal District relied on other records such as a Notice of Protest filed by
Samuel=s
agents.  The protest was for both
properties, #4530 and #9625, for the year 1989. 
The Appraisal District=s
block book also contained handwritten notations changing the address for
property #4530 and property #9625 from A3900
E. Camelback Road in Phoenix, Arizona@
to A5141 N. 40th Street, Suite No. 500,
Phoenix, Arizona 85018.@  Both accounts listed Samuel as the
owner.   The handwritten notations read, Aper R.C. Samuel call in req.@








Juan Sandoval, the
City Tax Assessor-Collector, testified that the name of the owner who appears
on the tax roll is determined by the information the City Tax Office receives
from the Appraisal District=s
certified appraisal rolls.  Based on the
information on the certified tax rolls, Sandoval testified that the bills for
both properties which had been sent to Samuel were not returned to the
City.  Sandoval stated accounts coded as Areturned mail@
were listed with two dollar signs (A$$@) on the certified tax rolls.  The City used this symbol, $$, until the late
1980=s.   Sandoval testified that neither property at
issue was so coded. 

Appellants and
Samuel filed a counterclaim against the City seeking affirmative relief
pursuant to the Declaratory Judgment Act. 
The City filed Special Exceptions, which the trial court sustained.  After a bench trial, the court entered
judgment in favor of the City.  The trial
court, in substance, made the following findings of fact:

1.         Tierra Sol Joint Venture owned the
parcels identified as #4530 and #9625 on January 1st of tax years 1989 through
1995.

 

2.         Robert C. Samuel was a partner in the
Tierra Sol Joint Venture at all times during tax years 1982 through 1995. 

 

3.         Robert C. Samuel held himself out as a
partner in the Tierra Sol Joint Venture since 1981.

 

4.         The City of El Paso sent all tax bills
and delinquent tax notices required by law for the property identified as #4530
to Robert C. Samuel during tax years 1989 through 1995.

 

5.         The City of El Paso sent all tax bills
and delinquent tax notices required by law for the property identified as #9625
to Robert C. Samuel during tax years 1990 through 1995.

 

The trial court, in substance, made the following
conclusions of law:

 

1.         Receipt of the tax bills and delinquent
tax notices covering the properties identified as #4530 and #9625 by Robert C.
Samuel is imputed to the Tierra Sol Joint Venture.

 

2.         Taxes, penalty, and interest in the
amount described in the judgment of this Court are due and owing to the City of
El Paso.

 

II.  DISCUSSION








Appellants present
three issues on appeal:  (1) Was Robert
C. Samuel a partner in Tierra Sol Joint Venture as early as 1982 so that notice
to him of delinquent taxes would be notice to the joint venture?; (2) did the
City of El Paso prove that it mailed the statutorily required delinquent tax
notices to the owner?; and (3) did the trial court err in sustaining the City
of El Paso=s special
exceptions and thereby eliminate Tierra Sol Joint Venture=s counterclaim for affirmative relief? 

A.  Findings of Fact and Conclusions of Law








A
trial court=s
findings of fact in a bench trial have the same force and dignity as a jury
verdict and we review sufficiency challenges to findings of fact by the same
standards we apply in reviewing a jury=s
findings.  See Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996).  In
reviewing the trial court=s
findings of fact for legal sufficiency of the evidence supporting them, we consider
only the evidence favorable to the decision of the trier of fact and disregard
all evidence and inferences to the contrary. 
Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992).  If there is more than a scintilla of evidence
to support the finding, the legal sufficiency point fails.  Stafford v. Stafford, 726 S.W.2d 14,
16 (Tex. 1987); Worsham Steel Co. v. Arias, 831 S.W.2d 81, 83
(Tex.App.--El Paso 1992, no writ).  When
reviewing factual sufficiency points, we review all the evidence in the record,
including any evidence contrary to the verdict. 
Plas‑Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445
(Tex. 1989).  We will set aside the
verdict only if the trial court=s
finding is so against the great weight and preponderance of the evidence as to
be manifestly unjust, shocking to the conscience, or clearly demonstrating
bias.  Pilkington v. Kornell, 822
S.W.2d 223, 230‑31 (Tex.App.--Dallas 1991, writ denied).  We will not substitute our judgment for that
of the fact finder, even if we would have reached a different conclusion when
reviewing the evidence.  FDIC v. F
& A Equip. Leasing, 854 S.W.2d 681, 684 (Tex.App.--Dallas 1993, no
writ).  A trial court=s conclusions of law are reviewed de
novo as legal questions.  Hitzelberger
v. Samedan Oil Corp., 948 S.W.2d 497, 503 (Tex.App.--Waco 1997, writ
denied).  We will follow a trial court=s conclusions of law unless they are
erroneous as a matter of law.  Id.
at 503.

1.  The Existence of a Partnership

In
Issue No. One, Appellants attack the legal and factual sufficiency of the trial
court=s finding
of fact number two, that Robert C. Samuel was a partner in the Tierra Sol Joint
Venture at all times during tax years 1982 through 1995.  Under the Texas Revised Partnership Act, a
partnership is an association of two or more persons to carry on a business for
profit as owners, whether the persons intend to create a partnership and
whether the association is called a Apartnership,@ Ajoint
venture,@ or other
name. Tex.Rev.Civ.Stat.Ann. art.
6132b‑ 2.02(a)(Vernon Supp. 2004-05). 
Appellants assert that a partnership consists of an express or implied
agreement containing four required elements: 
(1) a community of interest in the venture; (2) an agreement to share
profits; (3) an agreement to share losses; and (4) a mutual right of control or
management of the enterprise.  See
Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex. 1997), citing
Coastal Plains Dev. Corp. v. Micrea, Inc., 572 S.W.2d 285, 287 (Tex.
1978); see also Tex.Rev.Civ.Stat.Ann.
art. 6132b‑2.03.








It
is undisputed that Samuel had an interest in the Joint Venture.  However, there is no evidence of an agreement
to share profits or losses, and there is no evidence of a mutual right of
control or management of the enterprise. 
In fact, Branson testified that he objected to the transfer of interest
in the Joint Venture to Samuel and never agreed to admit him as a new party
under the partnership agreement.  Branson
stated he never had any intention of allowing Samuel to become a partner and
never entered into an agreement for sharing profits or losses.  Branson controlled the books of the Joint
Venture and did not allow Samuel access to the books.  Branson stated that he and Samuel filed
separate tax returns because they could not agree on how to file them.

While
the City produced evidence that Samuel held himself out to be a partner in the
Joint Venture, both in sworn pleadings and deposition testimony in previous
lawsuits, the Texas Supreme Court has held that if there is no evidence of any
one element of a partnership, a finding of a partnership cannot be upheld.  See Schlumberger, 959 S.W.2d at
176.  Accordingly, we find there is
legally insufficient evidence to support the trial court=s
finding of fact number two, that Samuel was a partner in the Joint
Venture.  Issue No. One is sustained. 

2.  Delinquent Tax Notices 

In
1979, the Legislature passed Senate Bill number 621, which enacted the
applicable provisions of the Tax Code.[1]  One of these provisions of the newly‑enacted
Tax Code was section 33.04, entitled ANotice
of Delinquency,@ which
became effective January 1, 1982.[2]  Since its enactment, this section of the code
was amended in 1981, 1985, 1999, and 2001.[3]  Following the 1985 amendments, section 33.04
read as follows:

(a)        At least once
each year the collector for a taxing unit shall deliver a notice of delinquency
to each person whose name appears on the current delinquent tax roll.  However, the notice need not be delivered if:


 








(1)        a bill for
the tax was not mailed pursuant to the authorization provided by Section
31.01(f) of this code; or 

 

(2)        the collector
does not know and by exercising reasonable diligence cannot determine the
delinquent taxpayer's name and address. 

 

(b)        In addition
to the notice required by Subsection (a) of this section, the tax collector for
each taxing unit in each year divisible by five shall deliver by mail a written
notice of delinquency to each person who owes a tax that has been delinquent
more than one year and whose name and mailing address are known to the
collector or can be determined by the exercise of reasonable diligence.  He shall state in the notice the amount of
the delinquent tax, penalties, and interest due, the description of the
property on which the tax was imposed, and the year for which the tax is
delinquent.  If the person owes
delinquent taxes for more than one year or on more than one property, the
collector may include all the delinquent taxes the person owes in a single
notice. 

 

(c)        Penalties and
interest on a tax delinquent more than five years or a multiple of five years
are cancelled and may not be collected if the collector has not delivered the
notice required by Subsection (b) of this section in each year that is
divisible by five following the date on which the tax first became delinquent
for one year.[4]

 








The 1985
amendments became effective August 26, 1985, and applied to notices required by
subsections (a) and (b) to be given in 1985.[5]  Section 33.04 was not amended again until
1999.[6]  The 1999 amendment became effective January
1, 2000[7]
and applied only to 33.04(b) notices given in and after 2000.[8]  Thus, section 33.04 notices required to be
given by the City for the properties at issue were governed by the 1985 version
of section 33.04 because the certified tax statements reflected delinquent
taxes for property #4530 for the years 1989 through 1995 and for property #9625
for the years 1990 through 1995.  To
reiterate, as stated by subsection 33.04(c), failure by the City to give the
required 33.04(b) notices mandated cancellation of penalties and interest on
the taxes owed.[9]








It
is undisputed that delinquent tax notices were sent to Samuel.  Juan Sandoval, the City Tax
Assessor-Collector, testified that the bills for both properties which had been
sent to Samuel were not returned to the City. 
The City introduced no evidence that the property owner, Tierra Sol
Joint Venture, as found by the court in finding of fact number one, received
such notices.  Branson testified that the
Joint Venture never received any tax deficiency notices after 1982.  Given our disposition of Issue No. One, the trial
court=s
conclusion of law number one, that receipt of the tax bills and delinquent tax
notices covering the properties identified as #4530 and #9625 by Robert C.
Samuel is imputed to the Tierra Sol Joint Venture, is erroneous as a matter of
law.  Likewise, findings of fact number
one, number four, and number five are inconsistent.[10]  There is no evidence that the property owner,
Tierra Sol Joint Venture, received the delinquent tax notices.  Issue No. Two is sustained and as such,
failure by the City to give the required 33.04(b) notices mandates cancellation
of penalties and interest on the taxes owed.

B.  Counterclaim

In
Issue No. Three, Appellants argue that the trial court erred in sustaining the
City=s special
exceptions and thereby eliminated Appellants=
counterclaim for affirmative relief. 
Appellants filed a counterclaim against the City seeking to have the
moneys paid for years 1982 through 1995 applied only to the taxes owed rather
than to the penalties and interest. 
Appellants argue that this was the only mechanism available which would
require the City to Adisgorge
the money it had paid itself for penalties and interest@
for the years in dispute and apply those moneys solely to the principal.  Given our disposition of Issue No. Two, we
find that the trial court erred in sustaining the City=s
special exceptions, thereby dismissing Appellants=
counterclaim.  Because the Court has
determined there is no evidence that the Joint Venture received the delinquent
tax notices and that the City is not entitled to penalties and interest on the
taxes owed for the years 1989-1995 for #4530 and 1990-1995 for #9625, Issue No.
Three is sustained.

The
portion of the judgment awarding penalties and interest is reversed.  We remand to the trial court for proceedings
not inconsistent with this opinion. 

 

 

 

November 24, 2004

RICHARD
BARAJAS, Chief Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew,
JJ.











[1]
Act of May 24, 1979, 66th Leg., R.S., ch. 841, '
1, 1979 Tex.Gen.Laws 2217.





[2]
Id. at ' 33.04.





[3]
Act of May 24, 1979, 66th Leg., R.S., ch. 841, '
33.04, 1979 Tex.Gen.Laws 2217,
2290-91, amended by Act of August 10, 1981, 67th Leg., 1st C.S., ch. 13, ' 128, sec. 33.04(c), 1981 Tex.Gen.Laws 117, 168, amended by Act
of May 26, 1985, 69th Leg., R.S., ch. 761, '
1, sec. 33.04, 1985 Tex.Gen.Laws
2600, 2601, amended by Act of May 30, 1999, 76th Leg., R.S., ch. 1481, ' 16, sec. 33.04, 1999 Tex.Gen.Laws 5097, 5101, amended by Act
of May 15, 2001, 77th Leg., R.S., ch. 1430, '
11, sec. 33.04, 2001 Tex.Gen.Laws
5109, 5112.





[4]
Act of May 26, 1985, 69th Leg., R.S., ch. 761, '
1, sec. 33.04, 1985 Tex.Gen.Laws
2600, 2601.





[5]
Id. at ' 2.





[6]
Act of May 30, 1999, 76th Leg., R.S., ch. 1481, '
16, sec. 33.04, 1999 Tex.Gen.Laws
5097, 5101.





[7]
Act of May 30, 1999, 76th Leg., R.S., ch. 1481, '
43(c), 1999 Tex.Gen.Laws 5097,
5114.





[8]
Act of May 30, 1999, 76th Leg., R.S., ch. 1481, '
45, 1999 Tex.Gen.Laws 5097, 5114.





[9]
Act of May 26, 1985, 69th Leg., R.S., ch. 761, '
1, sec. 33.04, 1985 Tex.Gen.Laws
2600, 2601.

 





[10]
In findings of fact number one, number four, and number five, the court found
Tierra Sol Joint Venture owned the parcels identified as #4530 and #9625 on
January 1st of tax years 1989 through 1995; the City of El Paso sent all tax
bills and delinquent tax notices required by law for the property identified as
#4530 to Robert C. Samuel during tax years 1989 through 1995; and the City of
El Paso sent all tax bills and delinquent tax notices required by law for the property
identified as #9625 to Robert C. Samuel during tax years 1989 through 1995.