Angel SANCHEZ, d/b/a Century 21
Casablanca Realty, Appellant,

v.

Ernesto GUERRERO and Norma
Guerrero, Appellees.

No. 08–93–00227–CV.

Court of Appeals of Texas,
El Paso.

July 14, 1994.

Richard P. Mesa, Brenda J. Norton, El Paso, for appellant.

Paul McCulloch, Charles Scruggs, W. Reed Leverton, Scruggs, Peterson & Leverton, P.C., El Paso, for appellees.

Before KOEHLER, LARSEN and McCOLLUM, JJ.

### OPINION

McCOLLUM, Justice.

This is an appeal from a judgment rendered against Angel Sanchez d/b/a Century 21 Casablanca Realty, Appellant, for the sum of $115,880, plus two times the first $1,000 awarded as actual damages, following a jury trial of a Deceptive Trade Practices Act case. In twelve points of error, Appellant attacks the legal and factual sufficiency of the evidence supporting the trial court's judgment. We affirm the judgment of the trial court.

### I.  SUMMARY OF THE EVIDENCE

The record shows that in December of 1987, Ernesto and Norma Guerrero, Appellees, saw a vacant house on the east side of El Paso and noticed that a sign at the house indicated that it was a Veterans Administration (VA) property.  Appellees called the VA to inquire about the house, and the VA referred them to Century 21 Casablanca Realty (Casablanca).  At that time, Casablanca was the management broker for the VA in El Paso County.  Through Rosalinda Ruiz, an agent of Casablanca, Appellees set up an appointment to see the house on January 9, 1988, and Ruiz showed them the house on that date.

Both Appellees testified at trial that upon seeing the house, they immediately liked it and wanted to buy it.  The record shows that Appellees then met with Angel Sanchez, the broker operating as Casablanca, in his office on January 14, 1988 and made a bid for the purchase of the house.  Appellees tendered to Sanchez at that time a check for $500 earnest money.  Appellees' bid was accepted by the VA on January 25, 1988.  The final papers were signed and the deal was finally closed on March 23, 1988, making Appellees the owners of their dream house.

Appellees allege their dream, however, quickly turned into a nightmare.  The record shows that while back at their rented home later that same evening, Appellees saw a television news program about Michelle Noble who had been tried and acquitted of child molestation charges.  The accusations against Ms. Noble charged that she had molested several children in her home, the home that Appellees had just bought.  This news soured Appellees' feelings toward the house, and they contacted Sanchez the following day to see if the deal could be canceled.  The record shows that Sanchez then wrote a letter to the VA inquiring about a possible repurchase of the house by the VA due to the unusual circumstances.  The response by the VA to this inquiry was that they would not cancel the sale.  Appellees never moved into

the house, and they made no mortgage payments. The VA eventually foreclosed.

Appellees sued Sanchez and Ruiz individually as well as Casablanca under the Texas Deceptive Trade Practices—Consumer Protection Act[1] (hereinafter DTPA), alleging that prior to the closing of the sale of the house, Sanchez and Ruiz knew that Noble had lived there and withheld this information from Appellees in the attempt to induce Appellees to complete the transaction. At the close of the evidence, the trial court directed a verdict in favor of Ruiz, and she is not a party in this appeal. The record shows that the jury found that Sanchez knowingly engaged in false, misleading, or deceptive acts or practices and that he knowingly engaged in an unconscionable action or course of action and that such actions were a producing cause of damages to Appellees. The jury awarded Appellees the sum of $120,000; $20,000 for the closing costs paid by Appellees; and $100,000 for their mental anguish.

Thereafter, the record shows that Appellees filed a motion to enter judgment requesting the court to reform the damages from $20,000 for closing costs to $15,880 in order to reflect the actual damages for closing costs presented and entered into evidence at trial. The trial court signed the judgment on March 26, 1993, awarding Appellees $115,880 in actual damages and also awarding Appellees two times the first $1,000 awarded as actual damages.

## II. ISSUES PRESENTED

In Points of Error Nos. One, Two, and Three, Appellant asserts that the trial court erred in denying his motions to disregard the jury's findings, for judgment n.o.v., and for new trial, and in entering judgment on the jury's verdict that he violated the DTPA by failing to disclose information to induce Appellees into entering into the transaction as there was no evidence, or in the alternative, factually insufficient evidence to support the verdict, and that the verdict is against the great weight and preponderance of the evidence so as to be manifestly unjust or clearly wrong.

In Points of Error Nos. Four, Five, and Six, Appellant asserts that the trial court erred in denying his motions to disregard the jury's findings, for judgment n.o.v., and for new trial, and in entering judgment on the jury's verdict that he acted knowingly as there was no evidence, or in the alternative, factually insufficient evidence to support the verdict, and that the verdict is against the great weight and preponderance of the evidence so as to be manifestly unjust or clearly wrong.

In Points of Error Nos. Seven, Eight, and Nine, Appellant asserts that the trial court erred in denying his motions to disregard the jury's findings, for judgment n.o.v., and for new trial, and in entering judgment on the jury's verdict that he acted unconscionably as there was no evidence, or in the alternative, factually insufficient evidence to support the verdict, and that the verdict is against the great weight and preponderance of the evidence so as to be manifestly unjust or clearly wrong.

In Points of Error Nos. Ten, Eleven, and Twelve, Appellant asserts that the trial court erred in denying his motions to disregard the jury's findings, for judgment n.o.v., and for new trial, and in entering judgment on the jury's verdict that Appellees be awarded damages for mental anguish as there is no evidence, or in the alternative, factually insufficient evidence to support the verdict, and that the verdict is against the great weight and preponderance of the evidence so as to be manifestly unjust or clearly wrong.

## III. STANDARDS OF REVIEW

We initially note that Appellant's Points of Error Nos. Three, Six, Nine, and Twelve challenge the factual sufficiency of the evidence by asserting that the jury's answers to these questions are against the great weight and preponderance of the evidence. However, since these points challenge the jury's affirmative findings on issues for which Appellees, as plaintiffs below, had the burden of proof, this "great weight and preponderance" standard is not the correct standard to be applied in this appeal. The

1. Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987 and Supp.1994).

"great weight and preponderance" standard is used to review a jury's negative finding in a question of fact for which the appellant carried the burden of proof at trial. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX.L.REV. 515, 527–28 (1991).

▇▇▇ The proper standard of review for an appellant challenging the factual sufficiency of the evidence supporting the jury's affirmative findings on fact questions for which the appellant did not have the burden of proof is the "insufficient evidence" standard. *Id.* Appellant did properly raise these points in Points of Error Nos. Two, Five, Eight, and Eleven, asserting in these points that there is insufficient evidence to support the jury's verdict. Since both the "insufficient evidence" points and "great weight and preponderance" points are essentially the same in that they challenge the factual sufficiency of the evidence supporting the jury's verdict, we will treat the "great weight and preponderance" points as merely duplicating the "insufficient evidence" points. *See Jauregui v. Jones*, 695 S.W.2d 258, 262 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

▇▇▇ In considering "no evidence" legal insufficiency points, Appellant's Points of Error Nos. One, Four, Seven, and Ten, we consider only the evidence which tends to support the jury's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Worsham Steel Co.*, 831 S.W.2d at 83; *Fuentes v. McFadden*, 825 S.W.2d 772, 775–76 (Tex.App.—El Paso 1992, no writ). A "no evidence" point may be sustained only when the record discloses: (1) a complete absence

of evidence of a vital fact; (2) the court is barred by the rules of law or evidence from giving weight to the evidence offered of a vital fact; (3) no more than a scintilla of evidence is offered of a vital fact; or (4) the evidence conclusively establishes the opposite of a vital fact. *Neily v. Aaron*, 724 S.W.2d 908, 913 (Tex.App.—Fort Worth 1987, no writ).

▇▇▇ Factual insufficiency points, Appellant's Points of Error Nos. Two, Three, Five, Six, Eight, Nine, Eleven, and Twelve, require us to examine all of the evidence in determining whether the evidence is sufficient to support the jury's verdict. *In re King's Estate*, 244 S.W.2d at 661; *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied); *Chandler v. Chandler*, 842 S.W.2d 829, 832–33 (Tex. App.—El Paso 1992, writ denied). The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Oechsner*, 840 S.W.2d at 136; *Chandler*, 842 S.W.2d at 833. It is not within the province of the court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796–97 (1951). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 511–12 (1947); *Oechsner*, 840 S.W.2d at 136; *Chandler*, 842 S.W.2d at 833.

## IV. FAILURE TO DISCLOSE INFORMATION

▇▇▇ The DTPA provides for a cause of action against a party that fails to disclose information with the intent to induce a consumer into a transaction into which the consumer would not have entered had the information been disclosed.[2] A careful reading of

---

**2.** Section 17.50 of the DTPA reads in pertinent part:

    (a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

    (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision

these provisions reveals that in order to maintain a cause of action for "failure to disclose," the plaintiff must prove:

(1) the defendant knew the information at the time of the transaction;

(2) the defendant failed to disclose the information;

(3) the failure to disclose was intended to induce the plaintiff into a transaction;

(4) the plaintiff would not otherwise have entered into the transaction; and

(5) the failure to disclose the information was a producing cause of damages.

*See* TEX.BUS. & COM.CODE ANN. §§ 17.46, 17.50; *Wyatt v. Petrila,* 752 S.W.2d 683, 687 (Tex.App.—Corpus Christi 1988, writ denied).

Applying these elements to the instant case, we note that the record shows that Appellees testified at trial that they asked both Appellant and Ruiz several times before the date of closing on the house about the previous owners of the house. Appellees also testified that the only response they received from Appellant to their inquiries about the prior owner was that he did not know who owned the house but would find out for them. Appellees further testified that the identity of the previous owner of the house was very important to them, and they proceeded to closing without knowing because they trusted Appellant.

Appellees then testified that upon learning on the day of closing about Ms. Noble and the allegations of child molestation in the house, they contacted Appellant. The record contains the following testimony from Mr. Guerrero regarding the conversation he had with Appellant at that time:

of Subsection (b) of Section 17.46 of this subchapter;

. . . . .

(3) any unconscionable action or course of action by any person; ...

TEX.BUS. & COM.CODE ANN. § 17.50 (Vernon 1987). Subsection (b) of Section 17.46 further provides in pertinent part:

(b) The term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

. . . . .

(23) the failure to disclose information concerning goods or services which was known at

[Mr. Guerrero]: ... I asked him, I said, 'Did you know that that house belonged to Mickey Noble?' and his answer to me was, 'Yes.'

[Question]: And what did you say then, if anything?

[Mr. Guerrero]: I asked him why he hadn't told me that the house belonged to Mickey Noble.

[Question]: How did he respond to that?

[Mr. Guerrero]: He said, 'I don't know.'

[Question]: What else did he say, if anything?

[Mr. Guerrero]: He went on to tell me that the house was now mine and that I was the owner of the house....

The record also shows that after this conversation with Mr. Guerrero, Appellant waited several days before contacting the VA to inquire about canceling the transaction. Appellant also cashed his commission check knowing that Appellees were dissatisfied with the transaction and wanted to cancel it.

Appellant testified that Appellees did not ask him prior to the closing who had owned or lived in the house. Appellant further testified that he did not know that Noble lived in the house prior to the closing of the transaction and only learned of this fact by watching the same television program that Appellees has seen.

Considering only the evidence that tends to support the jury's findings and disregarding all evidence and inferences to the contrary, it is the opinion of this Court that there is more than a scintilla of evidence supporting the jury's finding that Appellant engaged in a false, misleading, or deceptive act or practice, i.e., failed to disclose to Ap-

the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed; ....

TEX.BUS. & COM.CODE ANN § 17.46 (Vernon Supp. 1994).

pellees that Noble had lived in the house, that was a producing cause of damages to Appellees. Accordingly, Appellant's Point of Error No. One is overruled.

Further, after examining all of the evidence, it is the opinion of this Court that there is factually sufficient competent evidence to support this jury finding. The testimony of Appellant and Appellees regarding Appellant's knowledge of the fact that Noble had lived in the house was in direct conflict, and the jury's resolution of this conflict is controlling. Moreover, the testimony that the identity of the previous owners of the house was important to Appellees and the fact that they never moved into the house upon learning that Noble lived there supports the inference that Appellant's failure to disclose the information was a producing cause of damages to Appellees. Accordingly, Appellant's Points of Error Nos. Two and Three are overruled.

## V. UNCONSCIONABILITY

■ The DTPA also provides for a cause of action when an unconscionable action or course of action by a party constitutes a producing cause of actual damages. *See* TEX. BUS. & COM.CODE ANN. §§ 17.45, 17.50. The jury found that Appellant had engaged in an unconscionable action or course of action. Unconscionable action or course of action is defined by statute to describe an act which:

> (A) [T]akes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or
> (B) [R]esults in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

TEX.BUS. & COM.CODE ANN. § 17.45(5). The record shows that the jury question on this issue only instructed the jury on part (A) of the definition, so we need only examine the facts to see if they are legally and factually sufficient to support the finding of unconscionability under this definition.

The Texas Supreme Court has held that taking advantage of a lack of knowledge, ability, experience, or capacity to a grossly unfair degree "requires a showing that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Chastain v. Koonce,* 700 S.W.2d 579, 584 (Tex. 1985). The Supreme Court also held that in making this determination, the entire transaction should be examined. *Id.* at 583. The evidence in the instant case shows that Appellees were first-time home buyers and were unfamiliar with the entire process. The record also shows that Appellees testified that they trusted Appellant and relied on his expertise in real estate to guide them through the process.

The record also reveals that Appellant testified that when the average real estate purchaser asks about the previous owners of a house, it is logical to assume that they are also asking about the previous occupants as well. Appellant further testified that as a real estate broker, he has a duty to disclose facts known to him that might influence the sale, including allegations of child molestation in the house.

Considering only the evidence that tends to support the jury's findings, including the jury's finding that Appellant knew that Noble was the previous occupant of the house, it is the opinion of this Court that there is more than a scintilla of evidence supporting the jury's finding that Appellant engaged in an unconscionable action or course of action, i.e., failed to disclose to Appellees that Noble had lived in the house after being asked about the prior owners of the house. We hold that this failure to disclose took advantage of Appellees' lack of knowledge of real estate to a grossly unfair degree and was a producing cause of damages to Appellees. Accordingly, Appellant's Point of Error No. Seven is overruled.

Further, after examining all of the evidence, as outlined in our discussion of Points of Error Nos. One, Two, and Three, it is the opinion of this Court that there is factually sufficient competent evidence to support this jury finding. Accordingly, Appellant's Points of Error Nos. Eight and Nine are overruled.

## VI. KNOWING

■ In response to Jury Question Number 4, the jury found that Appellant engaged in his deceptive and unconscionable conduct

knowingly. "'Knowingly' means actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim ... but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." Tex.Bus. & Com.Code Ann. § 17.45(9). In the instant case, such objective manifestations of Appellant's knowing conduct include Appellant's statements that he knew the house belonged to Noble but did not know why he failed to tell Appellees and Appellant's actions of cashing his commission check and waiting several days before contacting the VA, knowing that Appellees were dissatisfied with the transaction.

Reviewing only the evidence supporting the jury's finding, it is the opinion of this Court that there is more than a scintilla of this circumstantial evidence supporting the jury's finding that Appellant acted knowingly. Accordingly, Appellant's Point of Error No. Four is overruled. Further, after examining all of the evidence, we are also of the opinion that there is factually sufficient competent evidence to support this finding. Accordingly, Appellant's Points of Error Nos. Five and Six are overruled.

## VII. MENTAL ANGUISH DAMAGES

Under the DTPA, mental anguish damages are recoverable when there is proof of deceptive or unconscionable actions or courses of action committed "knowingly." *Boyles v. Kerr*, 855 S.W.2d 593, 598 (Tex. 1993); *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 117–18 (Tex.1984). As discussed above, the jury found that Appellant violated the DTPA and that such violations were committed knowingly; therefore, the jury's award of $100,000 for the mental anguish of Appellees is proper if supported by legally and factually sufficient evidence.

At the outset, we again note that the process of awarding damages for mental anguish is difficult because mental anguish constitutes a subjective, non-pecuniary loss. *See Worsham Steel Co.*, 831 S.W.2d at 85. As this Court further stated in that case:

> Since mental anguish is a non-pecuniary loss, the amount awarded is generally within the broad discretion of the jury. Such discretion necessarily carries with it the risks of passion, prejudice, speculation and bias. Despite these risks, this Court has previously held that once the existence of some amount of mental anguish has been established, a jury's subsequent award of damages is virtually unreviewable. *Brown v. Robinson*, 747 S.W.2d 24 (Tex.App.—El Paso 1988, no writ).

In reviewing the sufficiency of the evidence to support the jury's award of mental anguish damages, we are guided by the somewhat unwieldy definition of mental anguish. The courts of this state have defined mental anguish to imply:

> [A] relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.... In short, Texas courts have interpreted the definition of mental anguish to mean that recovery is warranted in such cases where the plaintiff's mental pain has risen to such a level that it has rendered him incapable of dealing with certain everyday activities. For instance, as a result of the mental pain, the plaintiff suffers from a myriad of negative emotions. Some of these emotions may manifest themselves in such a way as to make it difficult for the plaintiff to eat, sleep, work, socially interact or carry on any other activity which, until the time of the alleged injury, he could accomplish on a day-to-day basis without difficulty.

*Worsham Steel Co.*, 831 S.W.2d at 85–86.

The record in the instant case includes Appellees' uncontroverted testimony that upon learning that they had just purchased the home where Noble had lived, both Appellees were very upset, in shock, and in agony. They also testified that the incident still upset Ms. Guerrero and caused her to cry up until the time of the trial. Appellees uncontroverted testimony also revealed that they felt "numb for quite sometime," Mr. Guerrero had to get counseling to mentally "reroute" himself, missed some work, and suf-

fered sleepless nights for some time after the incident, and Ms. Guerrero also needed counseling for some time after the incident. Mr. Guerrero testified on cross-examination that the sleepless nights stopped after his counseling.

This testimony reveals that Appellees suffered grief, severe disappointment, and despair as a result of losing their dream home the very day they finalized its purchase. The testimony also reveals that these negative emotions required Appellees to seek counseling and made it difficult for them to work and sleep for some time after the incident. Reviewing only the evidence that supports the jury's finding, we find that the above testimony constitutes more than a scintilla of evidence of Appellees' mental anguish. Accordingly, Appellant's Point of Error No. Ten is overruled.

Reviewing all of the evidence and the record as a whole, it is the opinion of this Court that Appellees' evidence of mental anguish rises above mere disappointment, anger, resentment, or embarrassment and reveals more than sadness by itself. The grief, severe disappointment, missed work, and need for counseling imply in this case the relatively high degree of mental pain required by established and respected Texas law. Accordingly, we hold that factually sufficient competent evidence exists to establish mental anguish, and Appellant's Points of Error Nos. Eleven and Twelve are overruled.

Having overruled each of Appellant's points of error, the judgment of the trial court is hereby affirmed.