NUMBER 13-02-225-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI-EDINBURG




THE CADLE COMPANY,                                                    Appellant,

v.

MUNIR MUNAWAR,                   Appellee.




On appeal from the 135th District Court
of Victoria County, Texas.




MEMORANDUM OPINION




Before Justices Yañez, Castillo, and Garza
Memorandum opinion by Justice Castillo
         This case is before this Court after we reversed and remanded a summary
judgment.


 A dispute arose between appellant Cadle Company and appellee Munir
Munawar over the purchase of a service station. On remand, the jury found in favor
of Munawar on his DTPA claims of misrepresentation, breach of express warranty, and
unconscionability. On appeal, Cadle asserts that it is not liable under the DTPA



because (1) under the law of the case, Munawar's misrepresentation claim involves
breach of contract that is not actionable under the DTPA; (2) even if Munawar's claim
were actionable under the DTPA, no liability exists for either misrepresentation or
breach of warranty; and (3) the evidence is legally and factually insufficient to show
(a) grossly unfair advantage, (b) gross disparity between the value received for the
property and the consideration paid, and (c) damages.


 We affirm the judgment of the
trial court.I. FACTUAL AND PROCEDURAL BACKGROUND
         This is a DTPA case that stems from a written contract for the sale of a
convenience store. By a contract dated August 5, 1992, Munawar purchased a
convenience store that had been foreclosed upon by Cadle. Munawar maintains that
at all relevant times, Cadle's agents were aware that Munawar did not want to be
limited to consignment sales of gasoline. Munawar further asserts that agents of
Cadle represented that he would not be thus limited. Additionally, Munawar asserts
that agents of Cadle represented that the gas pumps and related equipment


 were part
of the property to be transferred to Munawar at closing. The day after closing on the
property, Munawar took possession of the premises. At that time, Thomas Petroleum
informed Munawar that it owned certain equipment located on the property, including
the gas pumps, signs, and additional equipment, and that there was an agreement in
place to split gasoline profits on a "50/50" basis. Thomas further provided Munawar
with an "Exclusive Sales Agreement," which was an agreement between the supplier
and the former operators of the convenience store, Robert Quitta and Gladys Steshko. 
The agreement provided that gasoline would be bought exclusively from Thomas for
nine years


, and that Thomas would supply and remain the owner of equipment,
including gas pumps and signs located on the property. The agreement further set
forth a consignment schedule as to the sale of fuel. The agreement was recorded in
the Victoria County property records, filed May 12, 1989. In November of 1993,
Munawar entered into an agreement with Thomas to settle the portion of the claim
relating to the gas pumps and to grant Munawar the exclusive right to sell the
gasoline. Munawar paid Thomas $18,453.00, and brought suit against Cadle based
on several legal theories.II. PROCEEDINGS BELOW
         The trial court initially granted summary judgment in favor of Cadle. That
decision was appealed to this Court. This Court reversed and remanded the case for
a new trial. See Munawar v. Cadle Co., 2 S.W.3d 12, 21 (Tex. App.–Corpus Christi
1999, pet. denied). Again at the trial court level, the case proceeded to a jury trial,
which rendered judgment in favor of Munawar on his DTPA causes of action,
including: (1) engaging in false, misleading or deceptive acts or practices; (2) breach
of express warranty; and (3) engaging in an unconscionable action, along with an entry
of money damages.


 Cadle appeals that decision.
III. LAW OF THE CASE
         As part of its first issue, Cadle asserts it is not liable under the DTPA because
according to the law of the case in this Court's prior decision, Munawar's
misrepresentation claim involves a mere breach of contract that is not actionable under
the DTPA. See Cadle Co., 2 S.W.3d at 12. The "law of the case" doctrine binds a
court of appeals to its initial decision if there is a subsequent appeal in the same case.
Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986); see also Ramirez v.
Carreras, No. 13-02-00003-CV, 2004 Tex. App. LEXIS 7445, at *6 (Tex.
App.–Corpus Christi, Aug. 19, 2004, no pet.).


 The "law of the case" doctrine applies
to questions of law. Wakefield, 711 S.W.2d at 630. The doctrine does not apply to
questions of fact. Id.
         In the original proceeding, the trial court granted summary judgment in Cadle's
favor as to all causes of action without expressly stating the basis for its decision. 
Munawar appealed that judgment to this Court. In reversing and remanding the
matter, this Court stated "[b]ecause Cadle did not establish as a matter of law that
Munawar could not prevail on his DTPA claims for breach of warranty,
misrepresentation, and unconscionable acts, or his alternative breach of contract claim,
we hold that summary judgment was improper." Cadle Co., 2 S.W.3d at 21. This
Court noted that Cadle had not raised an argument in its motion for summary judgment
that Munawar's DTPA claims for breach of warranty or unconscionable acts involved
only contractual notions. Id. at 18. Therefore, at least two of Munawar's DTPA
theories, breach of warranty and unconscionability, were never before the court, and
Munawar was not barred upon remand from asserting them as bases for recovery. In
addition, this Court expressly reversed that part of Cadle's summary judgment relating
to DTPA breach of warranty, misrepresentation, and unconscionability.


 As such, we
overrule that portion of Cadle's first issue relating to the law of the case.IV. LEGAL SUFFICIENCY- UNCONSCIONABILITY AND DAMAGES
A. Role of the Jury
         A court of appeals is not a fact finder. Accordingly, we do not assess
witnesses' credibility or substitute our judgment for that of the jury, even if the
evidence could support a different result. Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 407 (Tex. 1998). Nor do we re-weigh the evidence and set aside a jury
verdict because we feel that a different result is more reasonable. Pool v. Ford Motor
Co., 715 S.W.2d 629, 634 (Tex. 1986) (op. on reh’g).
         The jury found that Cadle engaged in an unconscionable action or course of
action that was a producing cause of damages to Munawar. In its second issue, Cadle
asserts that the evidence is legally and factually insufficient to prove that (1) Cadle
took grossly unfair advantage of Munawar, and (2) a gross disparity existed between
the value received and the consideration paid. As such, Cadle argues it is not liable
for DTPA unconscionability. As we have concluded that the law of the case did not
bar Munawar from proceeding under the theory of DTPA unconscionability at the trial
court level, we proceed with our review.
B. Standard of Review
         We address legal-sufficiency challenges as either "no-evidence" or "matter-of-law" issues. Gooch v. Am. Sling Co., 902 S.W.2d 181, 183-84 (Tex. App.–Fort
Worth 1995, no writ). We analyze the issue as a "no-evidence" challenge when the
party complaining on appeal did not bear the burden of proof at trial. Id. In
challenging the legal sufficiency of the evidence to support a finding on which an
adverse party bore the burden of proof, the appellant must show that the record
presents no evidence to support the adverse finding. Croucher v. Croucher, 660
S.W.2d 55, 58 (Tex. 1983). 
         When the party brings a legal sufficiency challenge to a finding on which that
party bore the burden of proof at trial, we address the issue as a "matter-of-law"
challenge. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). 
If, in reviewing a "matter-of-law" challenge, we conclude that the record presents no
evidence to support the finding, we then examine the entire record to determine if a
contrary proposition is established as a matter of law. Holley v. Watts, 629 S.W.2d
694, 696 (Tex. 1982); Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766
S.W.2d 264, 276 (Tex. App.–Amarillo 1988, writ denied). 
         In performing a legal-sufficiency review, we consider only the probative evidence
and inferences that support the challenged finding, disregarding all evidence and
inferences to the contrary. Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002); Maxus,
766 S.W.2d at 276.


 We overrule a legal-sufficiency issue if the record reflects any 
evidence of probative force to support the finding. ACS Investors, Inc. v. McLaughlin,
943 S.W.2d 426, 430 (Tex. 1997). If there is more than a scintilla of evidence to
support the finding, the legal-sufficiency challenge fails. Formosa Plastics Corp. USA
v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998). We sustain
a legal-sufficiency challenge when (1) the record conclusively establishes the complete
absence of evidence of a vital fact, (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the
evidence conclusively establishes the opposite of a vital fact. Marathon Corp. v.
Pitzner, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam); Merrell Dow Pharms., Inc.
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Hines v. Comm'n for Lawyer Discipline,
28 S.W.3d 697, 701 (Tex. App.–Corpus Christi 2000, no pet.). The evidence is no
more than a scintilla and, in legal effect, is no evidence "[w]hen the evidence offered
to prove a vital fact is so weak as to do no more than create a mere surmise or
suspicion of its existence." Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983). Suspicion linked to other suspicion produces only more suspicion, not some
evidence. Pitzner, 106 S.W.3d at 727; Browning-Ferris, Inc. v. Reyna, 865 S.W.2d
925, 928 (Tex. 1993). Similarly, an inference stacked only on other inferences is not
legally sufficient evidence. Pitzner,106 S.W.3d at 727. Conversely, more than a
scintilla exists when the evidence "rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions." Transp. Ins. Co. v. Moriel, 879
S.W.2d 10, 25 (Tex. 1994). We reverse and render judgment when we sustain a
legal-sufficiency point. Vista Chevrolet, Inc. v. Lewis, 709 S.W.2d 176, 177 (Tex.
1986) (per curiam); Heritage Res., Inc. v. Hill, 104 S.W.3d 612, 619 (Tex. App.–El
Paso 2003, no pet.). C. Unconscionability
         Munawar asserted, and the jury found in his favor as to, a claim for
unconscionability under the DTPA. The DTPA creates a cause of action where an
unconscionable action or course of action is a producing cause of actual damages. 
See Tex. Bus. & Com. Code Ann. § 17.50(a)(3) (Vernon 2002). The DTPA defined
"unconscionable action or course of action" as an act or practice which, to a person's
detriment (1) takes advantage of the lack of knowledge, ability, experience, or capacity
of a person to a grossly unfair degree, or (2) results in a gross disparity between the
value received and consideration paid, in a transaction involving transfer of
consideration. See Act of June 19, 1983, 68th Leg., R.S., ch. 883, §§ 2, 3, 1983
Tex. Gen. Laws 4943, 4943-44, amended by Act of May 4, 1995, 74th Leg., R.S.,
ch. 414, § 2, 1995 Tex. Gen. Laws 2988, 3005 (amended 1995) (current version at
Tex. Bus. & Com. Code Ann. § 17.45(5) (Vernon 2002)). 
         Under section 17.50(a)(3), there is no requirement that the defendant's
unconscionable act occur simultaneously with the sale or lease of the goods or
services that form the basis of the consumer's complaint. Flenniken v. Longview Bank
& Trust Co., 661 S.W.2d 705, 707 (Tex. 1983) (citing Leal v. Furniture Barn, Inc.,
571 S.W.2d 864, 865 (Tex. 1978)); see Tex. Bus. & Com. Code Ann. § 17.50(a)(3)
(Vernon 2002). An action for DTPA unconscionable conduct may be maintained even
if the seller made no specific misrepresentations. Johnston v. McKinney Am., 9
S.W.3d 271, 278-79 (Tex. App.–Corpus Christi 1999, pet. denied) (citing Comm.
Escrow Co. v. Rockport Rebel, Inc., 778 S.W.2d 532, 538 (Tex. App.–Corpus Christi
1989, writ denied)). "Gross" as used in this section, means "glaringly noticeable,
flagrant, complete and unmitigated." State Farm Lloyds v. Nicolau, 951 S.W.2d 444,
451 (Tex. 1997) (discussing prior version of the statute). This is true for both
sections 17.45 (a) and (b). See Chastain v. Koonce, 700 S.W.2d 579, 583 (Tex.
1985). Review of a finding of unconscionability requires an examination of the entire
transaction, not the defendants' intent. See Cooper v. Lyon Fin. Servs., Inc., 65
S.W.3d 197, 207 (Tex. App.–Houston [14th Dist.] 2001, no pet.) (citing Koonce, 700
S.W.2d at 583). 1. Grossly Unfair Advantage
a. The Law
         The first ground for liability under DTPA unconscionability is to prove an
"unconscionable action or course of action," which is an act or practice which, to a
person's detriment takes advantage of the lack of knowledge, ability, experience, or
capacity of a person to a grossly unfair degree. See Act of June 19, 1983, 68th Leg.,
R.S., ch. 883, §§ 2, 3, 1983 Tex. Gen. Laws 4943, 4943-44 (amended 1995). The
plaintiff must show that the defendant took advantage of his lack of knowledge and
"that the resulting unfairness was glaringly noticeable, flagrant, complete and
unmitigated." See id.; see also Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 677
(Tex. 1998)). "[N]ot every misrepresentation of fact, even an intentional one,
constitutes unconscionable conduct." Latham v. Castillo, 972 S.W.2d 66, 72 (Tex.
1998). The test is whether the consumer was taken advantage of to a grossly unfair
degree. Id. This should be determined by examining the entire transaction and not by
inquiring whether the defendant intended to take advantage of the consumer or acted
with knowledge or conscious indifference. Koonce, 700 S.W.2d at 583. In order to
prove an act or course of action unconscionable, there is no need to prove the actor
had "actual awareness," when his skill or superior knowledge imposes a duty to
ascertain the fact in question. Williams v. Trail Dust Steak House, Inc., 727 S.W.2d
812, 816 (Tex. App.–Fort Worth 1987, no writ).
         As it must in a legal sufficiency challenge, our review encompasses only the
probative evidence and inferences supporting the challenged finding for Munawar. 
Lenz, 79 S.W.3d at 19. We begin by considering the first basis for liability under
unconscionability and review only the evidence tending to prove Cadle took grossly
unfair advantage of Munawar.
b. Analysis
         Munawar produced evidence in order to prove that Cadle took advantage of his
(1) lack of knowledge of the facts surrounding the transaction and (2) lack of ability
to understand the legal ramifications of the contract he entered into. See Act of June
19, 1983, 68th Leg., R.S., ch. 883, §§ 2, 3, 1983 Tex. Gen. Laws 4943, 4943-44
(amended 1995). Munawar testified that he knew no one in Victoria, Texas, prior to
this transaction. Munawar possessed no legal or real estate knowledge to rely on in
negotiating the contract. In addition to his lack of legal knowledge, Munawar lacked
the counsel of an attorney in contracting for the purchase of convenience store. 
Gladys Steshko, who operated the gas station at the time Munawar purchased it, and
who had owned the store prior to its acquisition by Cadle in the foreclosure
proceedings,


 provided the only assistance Munawar received in negotiating for the
convenience store. Munawar found himself negotiating with Gordon Bruce, a licensed
attorney working for Cadle. Munawar and Bruce faxed the contract back and forth
numerous times, each making changes to the document. Munawar insisted that the
following clause ("paragraph 26") be inserted into the final agreement:
26. SPECIAL PROVISIONS. (This section to include additional factual
data relevant to the sale which may include addendums.)
It is controllingly provided that buyer must have the right to terminate
any lease on said property by giving the Lessee 30 days written notice. 
Buyer's purpose in purchasing this property is to operate the convenience
store located on said property, including the sale of gasoline products,
himself.
 
This clause was accepted, but without stating why, Bruce changed the conveying
document from a general warranty deed to a special warranty deed. Munawar testified
he did not know the effect of this change. The title Cadle transferred to Munawar did
not specifically except the pumps and equipment at issue from what was transferred. 

         Cadle owned and possessed the property at least from August 5, 1992, to the
date of closing on September 25, 1992. Cadle therefore stood in the better position
to know of the existence of the agreement he had with Thomas.


 Munawar asserts
that Cadle should have taken steps to determine that it could perform what it had
promised to do under the special provision of the contract. Munawar testified that no
one informed him of any problem with the pumps prior to closing, even though
Munawar repeatedly communicated and discussed his desire to sell the gasoline
himself, without being subject to a consignment agreement. Munawar asserted that,
in addition, the title policy made no exception for the pumps and the related
equipment. After closing, Munawar received an indemnity affidavit as to debts, liens,
and possession executed by Cadle, which stated that there was no one else with any
claims against the property. The court admitted this affidavit into evidence at trial.
         Munawar further presented evidence that Cadle took advantage of his lack of
ability and experience in selling him the property. See Act of June 19, 1983, 68th
Leg., R.S., ch. 883, §§ 2, 3, 1983 Tex. Gen. Laws 4943, 4943-44 (amended 1995). 
As already stated, Munawar was not an attorney, nor a real estate agent. Munawar
testified to having limited experience with contracts of this magnitude, as he had
previously participated in only one transaction of this sort. 
         Numerous courts have found sufficient evidence to support unconscionability
in cases similar to this one. See generally, Sanchez v. Guerrero, 885 S.W.2d 487,
489-90 (Tex. App.–El Paso 1994, no writ) (court found ample evidence to support
finding real estate agent acted unconscionably, where he knew the prior owner of the
home was accused of child molestation but did not share that information with
potential buyers, and took advantage of home buyer's inexperience and trust in the
agent's expertise); Bonanza Rests. v. Uncle Pete's, 757 S.W.2d 445, 448 (Tex.
App.–Dallas, 1988, writ denied) (Uncle Pete's complained that when it undertook the
obligations of the franchise agreement, it did not know and was not told about the
restaurant's reputation for unsanitary operation, that it had been closed by city health
authorities, operated at a loss, or that operations were impaired by Bonanza's legal and
financial woes; the jury found Bonanza's conduct in selling the franchise to Uncle
Pete's was unconscionable within the meaning of the DTPA). 
         Munawar presented the aforementioned evidence that Cadle took advantage of
his lack of knowledge, ability, experience, or capacity to a grossly unfair degree. See
Act of June 19, 1983, 68th Leg., R.S., ch. 883, §§ 2, 3, 1983 Tex. Gen. Laws 4943,
4943-44, (amended 1995). The evidence included the fact that Munawar was not an
attorney and lacked the counsel of an attorney. In addition, Munawar testified that he
was assured that he could sell the gasoline himself, and requested the addition of
paragraph 26, only to later find that a document on file in that county proved an
agreement otherwise. Bruce changed the character of the contract from a general
warranty deed to a special warranty deed upon accepting the clause Munawar
requested. Cadle knew that Munawar was in a hurry to complete the transaction. 
Munawar insists no one informed him of any problem with the pumps, even though
he discussed his wish to sell gasoline without a consignment agreement. We conclude
that Munawar produced "evidence of probative force to support the jury's finding" that
Cadle engaged in unconscionable actions or practices with regard to Munawar, and
that Cadle's legal sufficiency challenge to Munawar's unconscionability claim fails. 
See McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). We overrule a legal-sufficiency
issue if the record reflects any evidence of probative force to support the finding. Id. 
2. "Gross Disparity"
a. The Law
         The second basis for liability under DTPA unconscionability is to prove an act
or a practice that results in a gross disparity between the value received and the
consideration paid, in a transaction involving transfer of consideration See Act of June
19, 1983, 68th Leg., R.S., ch. 883, §§ 2, 3, 1983 Tex. Gen. Laws 4943, 4943-44
(amended 1995). A consumer's proof of gross disparity under subdivision B does not
require proof that the defendant acted intentionally, knowingly or with conscious
indifference. Id.; Koonce, 700 S.W.2d at 583. A slight disparity between the
consideration paid and the value received is not unconscionable; a glaring and flagrant
disparity is. Id. at 583.b. Analysis
         The jury charge submitted at trial allowed the jury to consider two bases for
unconscionability: (1) that Cadle took advantage of Munawar to a grossly unfair
degree, and (2) that there was a gross disparity between the value received and the
consideration paid. We have found evidence of probative force supporting the jury's
decision that Cadle engaged in an unconscionable action or course of action by taking
advantage of Munawar to an unfair degree. See McLaughlin, 943 S.W.2d at 430. 
Accordingly, we need not determine whether Munawar presented legally sufficient
evidence of a gross disparity between the value received and the consideration paid. 
See Tex. R. App. P. 47.1. We overrule Cadle's second issue on appeal. 
 D. Damages
         We next address Cadle's third issue on appeal, challenging the legal sufficiency
of the evidence supporting the jury's findings on damages in this case. The jury
awarded Munawar $18,453.00 in damages–the amount of Munawar's alleged out-of-pocket loss. Munawar contracted to pay $175,000.00 for the property identified
under paragraph 2 of the earnest money contract.


 Munawar presented evidence
showing he paid this money upon closing. Munawar additionally paid $18,453.00 to
purchase equipment from Thomas upon demand from the same. Munawar asserted
that he paid $193,953.00 to purchase what he contracted to purchase for
$175,000.00. 
         Cadle complains that the evidence to prove the amount of money spent to
acquire all the property to be conveyed under the earnest money contract is legally
insufficient as (1) the amount paid to Thomas included property and rights not included
in the earnest money contract, and (2) there is no or insufficient proof that Thomas
owned the gas pumps and they were not conveyed by the earnest money contract. 1. The Law
         Under a proper measure-of-damages instruction, a fact finder has the discretion
to find damages within the range of evidence presented at trial. See Gulf States Utils.
Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002). Under the DTPA as it existed at the
time this case accrued and the suit was filed, a consumer was entitled to recover
"actual damages." See Act of May 4, 1995, 74th Leg., R.S., ch. 414, § 2, 1995 Tex.
Gen. Laws 2988, 3005 (amended 1995). Although the DTPA did not define "actual
damages," the term as used in the DTPA means those recoverable at common law. 
Castillo, 972 S.W.2d at 69, (citing Brown v. Am. Transfer & Storage Co., 601 S.W.2d
931, 939 (Tex. 1980)).
         Section 17.45(5) does not expressly require a consumer to prove the mental
attitude of the defendant in order to recover actual damages. See Act of June 19,
1983, 68th Leg., R.S., ch. 883, §§ 2, 3, 1983 Tex. Gen. Laws 4943, 4943-44
(amended 1995); Koonce, 700 S.W.2d 579, 583 (Tex. 1985). The legislative history
of the 1979 amendments to the DTPA supports the conclusion that the legislature did
not intend to require proof of intent, knowledge or conscious indifference to support
recovery. Koonce, 700 S.W.2d at 583.
2. Cadle's assertion that the damages included items not included in the contract
         Cadle first argues that the amount paid to Thomas included property and rights
not included in the earnest money contract. Cadle asserts the amount paid by
Munawar to Thomas included payment to procure more than the gas pumps and
signage. Cadle argues that the payment included compensation for a cash register and
a console used inside the store in authorizing gasoline sales, a computerized credit card
reader, the right to sell gasoline exclusively and a share of the profits from all gasoline
sales. Cadle asserts that in addition to all these items, the purchase of an air
compressor, not part of the earnest money contract, was part of the transaction. 
Cadle argues that in the absence of a segregation of the amounts paid for the different
property and rights under the Exclusive Sales Agreement, no causation exists between
the sale of the realty and the settlement amount Munawar paid to Thomas. 
a. Property
         Cadle objected to the damage question to the jury.


 In its motion for judgment
notwithstanding the verdict, Cadle preserved error only so far as to assert that as a
matter of law, no evidence was presented as to the amount paid to acquire all the
property to be conveyed. The motion solely complains that the consideration was paid
not only to acquire the equipment in question, but also to obtain a release from the
contract to purchase all gas from Thomas. The motion for judgment notwithstanding
the verdict does not address the extraneous air pump. On appeal, Cadle again
complains based on the fact that Munawar paid for extraneous air pumps with his
$18,453.00 payment. Munawar admitted this fact at trial. 
         Except for fundamental error, to preserve any complaint for appellate review,
a party must present to the trial court a timely and specific request, objection, or
motion. Tex. R. App. P. 33.1(a); Wal-Mart Stores, Inc. v. McKenzie, 997 S.W.2d 278,
280 (Tex. 1999) (per curiam). In particular, to preserve a legal-sufficiency challenge,
a party must have specifically raised its complaint in (1) a motion for instructed
verdict, (2) an objection to the submission of a jury question, (3) a motion for
judgment notwithstanding the verdict, (4) a motion to disregard the jury's answer to
a vital fact question, or (5) a motion for new trial. Cecil v. Smith, 804 S.W.2d 509,
510-11 (Tex. 1991); U.S.A. Precision Machining Co. v. Marshall, 95 S.W.3d 407, 411
(Tex. App.–Houston [1st Dist.] 2002, pet. denied). We conclude that, as Cadle's
motion for judgment notwithstanding the verdict did not include the argument now
asserted on appeal, Cadle has waived error as to non-segregation of monies spent in
gaining the pumps, in buying out the consignment portion of the agreement, and those
monies spent for extraneous items, such as the air compressor. See Tex. R. App. P.
33.1(a).
         To counter Cadle's assertion that the amount paid to Thomas included property
not included in the earnest money contract, Munawar first points out that it is
undisputed that all property Munawar eventually acquired from Thomas was either
affixed to or situated on the property in question on the date of the earnest money
contract. Therefore, Munawar claims, all of the property acquired from Thomas was
property that should have been transferred or conveyed to Munawar from Cadle at
closing. Munawar asserts he insisted on the inclusion of paragraph 26 to protect him
from any litigation involving third parties asserting claims against the property and
gasoline business. Further, the exclusive sales agreement between Thomas and
Cadle's predecessors-in-interest was on file in Victoria County, Texas, on the date of
the contract between Munawar and Cadle.


 The document reflects the gas pumps
and related equipment were owned by Thomas. Cliff Thomas, the owner of Thomas
Petroleum, testified that Thomas Petroleum owned the gas pumps and related
equipment situated on the property in question. Munawar insists that no evidence on
the record shows Cadle ever owned the pumps in question.  
b. Rights
         Cadle additionally argues that money paid to Thomas was for rights not included
in the earnest money contract. Munawar counters that Cadle's agents were aware
that Munawar did not want to be limited to consignment sales of gasoline, and that
agents of Cadle represented that he would not be. Munawar testified that he insisted
on the inclusion of Paragraph 26 in the contract for that very reason. After closing,
Munawar received an indemnity affidavit as to debts, liens, and possession, executed
by Cadle, which stated there was no one else with any claims against the property. 
The court admitted this affidavit into evidence at trial. Contrary to paragraph 26 and
the indemnity affidavit, the exclusive sales agreement between Thomas and the
predecessors-in-interest to the gas station directly infringes upon Munawar's right to
sell the gasoline on a non-consignment basis. Munawar asserts he paid $18,453.00
to get rid of all the claims of Thomas.
3. Cadle's assertion that evidence to show Thomas owned the pumps was legally
insufficient.
         Finally, Cadle asserts that the evidence presented to show that Thomas owned
the gas pumps and that the pumps were not conveyed by the earnest money contract
is legally insufficient. To prove this contention, Cadle only offers a restatement of its
assertion that the earnest money contract between Cadle and Munawar was supposed
to, but did not, convey the rights to the gas pumps and signage. Cadle offers no proof
of ownership in anyone other than Thomas. Munawar asserts that the sales
agreement executed by Thomas and Cadle's predecessor-in-title was admitted in
evidence as proof that the gas pumps were owned by Thomas. This document, filed
in Victoria County on May 12, 1989, reflects ownership in the pumps by Thomas. 
Cliff Thomas testified to that fact as well. 
         We find more than a scintilla of evidence to support the jury's damages finding.
See Moriel, 879 S.W.2d at 25; see also Kindred, 650 S.W.2d at 63. We do not find
the evidence to be factually too weak to support the jury's damages finding. See
Ritchey v. Crawford, 734 S.W.2d 85, 86-87 n.1 (Tex. App.–Houston [1st Dist.]
1987, no writ) (quoting Robert W. Calvert, "No Evidence "and "Insufficient Evidence
"Points of Error, 38 Tex. L. Rev. 361, 366 (1960)). The jury's damages finding was
within the range of evidence presented at trial and within the jury's discretion. See
Gulf States Utils. Co., 79 S.W.3d at 566. After observing all the evidence presented
at trial, the jury determined Munawar suffered $18,453.00 in damages, an amount
allowable under the DTPA as it read at that time, for actual damages. We conclude
the evidence was legally sufficient to support an award of $18,453.00. See id. 
V. FACTUAL SUFFICIENCY-UNCONSCIONABILITY
         By its second issue, Cadle also alleges factually insufficient evidence was
presented to prove: (1) that Cadle took grossly unfair advantage of Munawar (and
therefore Cadle cannot be liable for DTPA unconscionability), (2) a gross disparity
between the value received for the property and the consideration paid, and (3) the
damages awarded. In relation to damages, Cadle asserts Munawar failed to prove the
amount of money spent to acquire all the property to be conveyed under the earnest
money contract. Cadle states the amount paid to Thomas included property and rights
which were not part of the earnest money contract, which Cadle maintains is
undisputed. Finally, Cadle argues, apparently in the alternative, factually insufficient
proof exists to prove that Thomas owned the gas pumps and that the pumps were not
conveyed by the earnest money contract. 
A. Standard of Review
         Unlike legal-sufficiency challenges, factual-sufficiency issues concede that the
record presents conflicting evidence on an issue. Maxus, 766 S.W.2d at 275. Like
legal-sufficiency challenges, the standard of review on factual-sufficiency issues
depends on the burden of proof at trial. Id. at 275. The party attacking a finding on
which an adverse party bore the burden of proof must show that the record presents
"insufficient evidence" to support the finding. Gooch, 902 S.W.2d at 184. In
reviewing an insufficient-evidence issue, we examine and consider all of the evidence,
not just the evidence that supports the verdict, to see whether it supports or
undermines the finding. Maritime Overseas, 971 S.W.2d at 406-07. We set aside the
finding for factual insufficiency if the "evidence adduced to support the vital fact, even
if it is the only evidence adduced on an issue, is factually too weak alone to support
it." See Ritchey, 734 S.W.2d at 86-87 n.1.
         If we reverse a trial court's judgment on factual-sufficiency grounds, we detail
all of the evidence relevant to the issue and articulate why the finding is factually
insufficient. Maritime Overseas Corp., 971 S.W.2d at 407. We reverse and remand
for a new trial when we sustain a factual-sufficiency point. Glover v. Tex. Gen.
Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981) (per curiam); Heritage Res.,
104 S.W.3d at 619. 
B. Unconscionability
1. Grossly Unfair Advantage
         In reviewing the record as related to factual sufficiency, we consider all the
evidence, not just the evidence that supports the verdict, to see whether it supports
the trial court's finding. Maritime Overseas, 971 S.W.2d at 406-07. As evidence
presented which supports the trial court's findings has already been considered above,
there is no need to again discuss that evidence here. We turn to evidence presented
contrary to Munawar's contention that Cadle took grossly unfair advantage of him. 
         Munawar wanted to purchase the property prior to any contact with Cadle. 
Munawar did, in fact, bid against Cadle at the foreclosure sale, the morning the
contract was signed between the two, but lost when Cadle outbid him. Munawar
sought out the property, negotiated a contract, and signed a contract for the property
all inside one day. Cadle points out that Munawar had almost two months to review
the contract, to look at the property, review the title, and/or hire an attorney before
closing the deal. Cadle asserts no evidence was offered tending to prove Cadle knew
something Munawar did not. In addition, Cadle asserts Munawar did not prove he
possessed inferior ability, experience, or capacity of which Cadle could take
advantage. Cadle points to the fact that Munawar already owned a convenience store
and was an educated, intelligent, experienced business person. Cadle asserts
Munawar knew how to hire an attorney but chose not to in this instance. 
         The jury was the sole trier of fact and of the credibility of the witnesses. See
Maritime Overseas Corp., 971 S.W.2d at 407. We do not assess witnesses'
credibility or substitute our judgment for that of the jury, even if the evidence could
support a different result. Id.; see Pool, 715, S.W.2d at 634. The jury was free to
decide that Munawar was an experienced businessman who understood the
importance of written contracts, participated in contract negotiations, and committed
to a written contract for the purchase of a business. Even so, by its verdict, the jury
found Cadle took grossly unfair advantage of Munawar. We conclude that the record
evidence, reviewed as a whole, is not factually too weak to support the jury's finding. 
Considering all of the evidence at trial, we find that the evidence adduced to support
the theory of unconscionability based on Cadle taking unfair advantage of Munawar,
is not factually too weak to support the judgment. We conclude the evidence was
factually sufficient to support the finding of unconscionability. See Ritchey, 734
S.W.2d at 86-87 n.1.
2. Gross Disparity
         Also in connection with unconscionability, Cadle alleges factually insufficient
evidence to show a gross disparity between the value received for the property, and
the consideration paid. We do not consider this issue as we have already found the
facts sufficient to support the jury's finding of unconscionability. See Tex. R. App. P.
47.1. We overrule Cadle's second issue on appeal.
 
C. Damages
         Finally, Cadle complains that the evidence to prove the amount of money spent
to acquire all the property to be conveyed under the earnest money contract was
factually insufficient as (1) the amount paid to Thomas included property and rights
not included in the earnest money contract, and (2) there is no or insufficient proof
that Thomas owned the gas pumps and that they were not conveyed by the earnest
money contract. As that evidence which tends to support the trial court's findings as
relates to damages has already been discussed, we now turn to that evidence which
tends not to support the trial court's decision on damages.
         Cadle asserts the amount paid by Munawar to Thomas included payment for
claims to more than the gas pumps and signage. Cadle argues the payment included
compensation for a cash register and a console used inside the store in authorizing
gasoline sales, a computerized credit card reader, the right to sell gasoline exclusively
and a share of the profits from all gasoline sales. Cadle asserts that in addition to all
these items, the purchase of an air compressor, not part of the earnest money
contract, was part of the transaction. 
         Munawar testified he paid $18,453.00 for all the property and rights in the
Exclusive Sales Agreement, plus the air compressor. Munawar testified the payment
for the two were not separated out in any way. Munawar stated that the twenty-year
exclusive sales agreement was his "major concern." Cadle again asserts that, in the
absence of a segregation of the amounts paid for the different property and rights
under the exclusive sales agreement, no causation exists between the sale of the
realty and the settlement amount Munawar paid to Thomas. We conclude that,
because Cadle's motion for judgment notwithstanding the verdict did not include the
argument now asserted on appeal, Cadle has waived error as to non-segregation of
monies spent in gaining the pumps, in buying out the consignment portion of the
agreement, and those monies spent for extraneous items, such as the air
compressor.


 Tex. R. App. P. 33.1; Cecil, 804 S.W.2d at 510-11; see also Tex. R.
Civ. P. 324 (b)(2).
         We do not find the evidence to be factually too weak to support the jury's
damages finding. See Richey, 734 S.W.2d at 86-87 n.1. The jury's damages finding
was within the range of evidence presented at trial and within the jury's discretion. 
See Gulf States Utils. Co., 79 S.W.3d 566. After considering the evidence presented
at trial, the jury determined Munawar suffered $18,453.00 in damages. We hold the
evidence factually sufficient to support the damages award. See id. We overrule
Cadle's third issue on appeal.
VI. MISREPRESENTATION AND WARRANTY
         Also by its first issue, Cadle asserts that even if Munawar's claims were
actionable under the DTPA, there is no liability for either misrepresentation or breach
of warranty because: (1) Munawar failed to prove that Cadle did not own the gas
pumps and the pumps were not conveyed by the special warranty deed; and (2) even
if Cadle did not own the gas pumps, it delivered exactly what it promised under the
special warranty deed, which was good title to all claims by and through it. Because
the jury charge conditioned the recovery of damages on a "yes" answer to any one of
three questions: one on misrepresentation, one on warranty, and one on
unconscionability, and because we find that the evidence supports recovery on
unconscionability, it is not necessary to address the trial court's findings on
misrepresentation or warranty. See Tex. R. App. P. 47.1.


 We overrule Cadle's first
issue on appeal.
VII. DISPOSITION
         We affirm the judgment of the trial court. 
                                                                        ERRLINDA CASTILLO
                                                                        Justice

Memorandum Opinion delivered and filed
this 2nd day of June, 2005